[No. 52521-2-I.   Division One.   June 7, 2004.]

THOMAS A. CENA, SR., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

916

*Ann Pearl Owen* (of *Ann Pearl Owen, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Beverly Goetz* and *Charlotte E. Clark-Mahoney, Assistants,* for respondent.

Grosse, J. — It is well-settled law in Washington that the rights of claimants under the Industrial Insurance Act

(IIA), Title 51 RCW, are determined and controlled by the law in effect at the time of the injury. Cena's argument to the contrary fails. The decision of the trial court is affirmed.

## FACTS

The parties stipulated to an agreed statement of facts. Thomas A. Cena, Sr., was injured on January 29, 1982, while working for the Department of Employment Security. His worker's compensation claim was allowed.[1] Cena retired from state employment on June 1, 1982. Cena's monthly wage on the date he was injured was $1,794. Under the statute in effect at that time, Cena was eligible for monthly disability benefits equal to 65 percent of his monthly cash wage, or $1,166, but the amount was subject to additional statutory caps. Under the caps in effect in 1982, all workers injured between July 1, 1981, and June 30, 1982, were limited to a monthly compensation amount equal to 75 percent of the statewide average wage figure,[2] which came to $967.81 per month.

In 1996, the Department of Labor and Industries (Department) awarded Cena temporary disability benefits covering the period of June 1, 1982 through June 21, 1996. Cena was placed on a worker's compensation pension effective June 22, 1996.

The Department's determination of Cena's wage at the time of injury did not include the value of any employer-paid benefits.[3] The Department determined that any addi-

---

[1] There was confusion and disagreement over what benefits Cena sought and when application for benefits was made. It took 14 years to determine the benefit amounts. Cena has other cases pending in this court and in the superior court on related claims.

[2] Former RCW 51.32.060 (1977) (pension) and former RCW 51.32.090 (1980) (temporary disability/time loss).

[3] These employer-paid benefits are known as *"Cockle"* benefits. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 822, 16 P.3d 583 (2001). There, the court construed the language of RCW 51.08.178(1) to mean that "wages" include readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting the workers' basic health and survival.

tions to his cash wage for health care benefits or other includable fringe benefits would not increase Cena's benefit because he was already receiving the maximum compensation rate.

Further, Cena's social security retirement benefit was offset against his monthly compensation amount beginning March 1, 1996. The Department determined the offset amount and entered the order in May 1996. Cena did not appeal this order.

The issues raised by Cena to this court involve three Department orders: (1) an order from a prior Board of Industrial Insurance Appeals (Board) appeal by Cena,[4] (2) the Board's order that is directly before this court, and (3) the social security offset order mentioned above.

The Department did not seek a stay of the first order mentioned; it simply made the recalculation. Based on this calculation, the Department paid Cena additional loss of earning power (LEP) benefits for two periods not previously covered.[5] The Department affirmed its orders on July 3, 2000. Cena appealed the Department's decision to the Board. There, he argued for a different calculation of benefits and for an award of interest on past time-loss benefits. Cena asserted that the cost of employer-paid fringe benefits should have been included in his monthly wage rate when his benefit was determined. The Department claimed that Cena was already receiving the maximum benefit allowed and that adding the value of fringe benefits would not result in additional compensation.

---

[4] The Board reversed and remanded Cena's case to the Department to recalculate benefits to rectify an error in the original calculation. The Board's order to recalculate was dated December 9, 1999. Cena appealed this order to King County Superior Court seeking: (1) payment of prejudgment interest, (2) a damage award for alleged delays in making the payments, and (3) a credit against pension reserve funds Cena spent on retraining himself to become self-employed following his injury. At the time of the briefing, the parties had not indicated that a final judgment had been entered in the matter.

[5] Those benefit recalculations were for the periods of June 1, 1982, through December 6, 1992, issued March 17, 2000, and for December 7, 1992, through June 21, 1996, issued February 7, 2000.

A hearing before an administrative law judge (ALJ) was held on the second matter listed above. Posthearing briefs were filed in which Cena raised only two issues: (1) whether *Cockle*[6] required the Department to include employer-paid fringe benefits and health insurance in determining Cena's monthly wage rate and (2) whether a 1993 amendment to RCW 51.32.090 did away with the cap on monthly compensation in effect on the date of Cena's injury. Cena failed to raise or argue any issue of social security offset or interest demand to the Board.

The proposed decision and order (PD&O) of the ALJ held that Cena was already receiving the maximum benefit allowed by law and concluded that adding the cost of employer-paid fringe benefits would not result in any increase in monthly compensation. This decision affirmed the Department's July 3, 2000 order. Cena petitioned for review, which was denied by the Board. On August 7, 2002, the Board adopted the PD&O as the final Board order. Cena appealed to the superior court. Again, Cena addressed only the two issues argued and briefed to the Board. The superior court affirmed the Board's findings and conclusions on June 9, 2003 and awarded statutory fees. Cena appeals the decision.

## DISCUSSION

■ ■ This is a review of a decision by the Board of Industrial Insurance Appeals. It involves questions of statutory interpretation. Statutory interpretation is a question of law and is reviewed de novo.[7] "The primary goal of statutory construction is to carry out legislative intent."[8]

### Date for determination of cap on benefits

Cena claims the instant dispute is whether the monthly compensation rate is tied to the date of the injury or the

---

[6] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 16 P.3d 583 (2001).

[7] *Cockle*, 142 Wn.2d at 807; *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996).

[8] *Cockle*, 142 Wn.2d at 807 (citing *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)).

date benefits were first paid. He argues that the cap in place when benefits were first paid in 1996 is the correct cap to use and alleges the Department erred in using the cap in place at the time of the injury.

Under the versions of RCW 51.32.060(5) and RCW 51.32.090(7) in effect on January 29, 1982,[9] the date Cena sustained his work related injury, the legislature limited the maximum benefit compensation to 75 percent of the average monthly wage in the state as computed under provisions of RCW 51.08.018, subject to cost of living adjustments under RCW 51.32.075. The legislature amended these caps in 1988 and 1993.

Cena asserts the 1993 amendments to RCW 51.32.060(5) and RCW 51.32.090(7) did away with the statutory cap as of the date of injury and created a cap on the benefit schedule based on the date of receipt of benefits.[10] He argues that omission of a reference in the 1993 amendment to the percentage figure applicable to dates before June 30, 1993, shows a legislative intent to do away with the prior percentage-based statutory caps for all benefits paid thereaf-

---

[9] From July 1, 1971 to June 30, 1988, both these statutes read: "In no event shall the monthly payments provided in this section exceed seventy-five percent of the average monthly wage of the state as computed under the provisions of [RCW 51.08.018]." LAWS OF 1971, ch. 289 §§ 8, 11, 90.

From July 1, 1988, through June 30, 1993, these statutes read: "In no event shall the monthly payments provided in this section exceed one hundred percent of the average monthly wage in the state as computed under the provisions of RCW 51.08.018." LAWS OF 1988, ch. 161, §§ 1, 3, 17.

As of July 1, 1993, both RCW 51.32.060(5) and RCW 51.32.090(7) read: "In no event shall the monthly payments provided in this section exceed the applicable percentage of the average monthly wage in the state as computed under the provisions of RCW 51.08.018 as follows:

| "AFTER | PERCENTAGE |
|---|---|
| "June 30, 1993 | 105% |
| "June 30, 1994 | 110% |
| "June 30, 1995 | 115% |
| "June 30, 1996 | 120%" |

LAWS OF 1993, ch. 521, §§ 2, 3, 4.

[10] Even in the case that Cena relies upon for his argument of increased wages, the Supreme Court said that the rates for time loss or worker's compensation pension benefits are determined at the time of the injury. *Cockle*, 142 Wn.2d at 806.

ter, regardless of the date of the injury. He urges this liberal interpretation and asserts that the underlying statutory intent of RCW 51.32.090, as stated by the legislature, and as is obvious from the statute itself, is to increase inadequate compensation provided under the act. We disagree.

■■ Contrary to Cena's argument, amending a statute does not necessarily mean that the prior version of the statute ceases to exist. An amendment generally means that the new statute will apply as of the effective date of the amendment.[11] There are a number of cases in which a preamendment version of a statute will continue to govern in cases arising prior to the amendment, particularly where vested rights or contractual obligations are affected.[12]

■ It is the *Ashenbrenner* case and its progeny upon which the Department and this court rely. In *Ashenbrenner*, the Supreme Court held that the rights of worker's compensation claimants are controlled by the law in force at the time of the injury rather than by the law that subsequently became effective.[13] The *Ashenbrenner* rule provides that a newly-enacted legislative schedule of benefits applies prospectively to industrial injuries that occur on or after the effective date of the legislation establishing the new benefit schedule, unless there is a clear expression of legislative intent to the contrary. Here there is no expression of any such legislative intent.

The injured worker in *Ashenbrenner* made arguments similar to Cena's, that omission of a reference in the amendment to the percentage figure applicable in prior versions of the statute evidences legislative intent to do

[11] A statute is presumed to operate prospectively unless the legislature indicates that it is to operate retroactively. *State v. McClendon*, 131 Wn.2d 853, 861, 935 P.2d 1334 (1997).

[12] *State v. T.K.*, 139 Wn.2d 320, 327-28, 987 P.2d 63 (1999) (noting a number of cases and citing *Ashenbrenner v. Dep't of Labor & Indus.*, 62 Wn.2d 22, 25, 380 P.2d 730 (1963)).

[13] *Ashenbrenner v. Dep't of Labor & Indus.*, 62 Wn.2d 22, 25, 380 P.2d 730 (1963); see *Hubbard v. Dep't of Labor & Indus.*, 140 Wn. 2d 35, 42, 992 P.2d 1002 (2000); see also *Willoughby v. Dep't of Labor & Indus.*, 147 Wn.2d 725, 744, 57 P.3d 611 (2002) (Madsen, J. concurring/dissenting) (the rights of claimants under the act are determined according to the law in force when they were injured).

away with the prior caps, regardless of the date of the injury. That argument was rejected in *Ashenbrenner*.

Cena's attempt to distinguish *Ashenbrenner* does not survive scrutiny. Cena claims the benefits in *Ashenbrenner* were survivor benefits, not wage continuation or pension benefits. While it makes little difference to the analysis, the benefits in *Ashenbrenner* were in fact pension benefits. In any event, the calculation of the basic benefit is the same. The statutory caps on monthly compensation benefits under RCW 51.32.060 and RCW 51.32.090 are identical.

To decide whether the 1993 amendments apply to Cena, this court first looks to the language of the statute. If it is clear and unambiguous, a court may not look beyond the language of the statute.[14] But the amendments did not make a clear and unambiguous statement. Cena claims the legislature clearly meant to do away with the prior caps. As noted in *Ashenbrenner*, if the legislature intended to make a major modification to the worker's compensation statute, it would have used additional terms such as "regardless of the date of injury" or other similar language.[15] The legislature did not, and this court will not signal a departure from the long-established rule that requires that Cena's award be governed by the law in effect at the time of his injury.

Further, courts disfavor retroactivity.[16] A statute operates prospectively when the precipitating event for its application occurs after the effective date of the statute. Again, it has long been held that awards payable under the worker's compensation act are governed by the law in effect at the time of the injury.[17]

---

[14] *T.K.*, 139 Wn.2d at 329.

[15] *Ashenbrenner*, 62 Wn.2d at 26.

[16] *In re Estate of Burns*, 131 Wn. 2d 104, 110, 928 P.2d 1094 (1997).

[17] *See Lynch v. Dep't of Labor & Indus.*, 19 Wn.2d 802, 807, 145 P.2d 265 (1944).

Cena's reliance on *Kilpatrick v. Department of Labor & Industries*[18] to support his argument that the statute in effect at the time of the commencement of benefit payments governs is also misplaced. *Kilpatrick* did not do away with the *Ashenbrenner* rule; in fact, *Kilpatrick* relied on the *Ashenbrenner* rule.[19] In *Kilpatrick* there were separate and distinct diseases as a result of asbestos exposure with separate dates of disease manifestation. In this case there is just one industrial injury claim.

Cena also argues the IIA is remedial and that the 1993 amendments should be applied retroactively. But even if the 1993 amendments at issue are remedial, a statute will not be applied retroactively if it affects a substantive or vested right.[20] Cena's right to compensation as granted by the legislature vested at the time of the injury.

Further, RCW 51.08.178(1), the section of the IIA governing the computation of monthly wages, states that, "[f]or the purposes of this title, the monthly wages the worker was receiving from all employment *at the time of injury* shall be the basis upon which compensation is computed."[21] The statute embodies the *Ashenbrenner* rule.

The legislative history regarding the 1993 cap amendments also contradicts Cena's argument. The fiscal note associated with House Bill 1248, the bill introduced to increase the caps, states as one of its assumptions that the increased disability entitlement will apply only to claims for injuries occurring on or after July 1, 1993.

Cena's argument that this court should ignore or distinguish *Ashenbrenner* and calculate his benefits based on the statutory cap in effect at the time these benefits were paid is rejected. The Board's decision is affirmed.

---

[18] *Kilpatrick v. Dep't of Labor & Indus.*, 125 Wn.2d 222, 883 P.2d 1370, 915 P.2d 519 (1994).

[19] *Kilpatrick*, 125 Wn.2d at 228.

[20] *McClendon*, 131 Wn.2d at 861.

[21] (Emphasis added.)

### *Cockle* benefits

Next, Cena argues that the Department erred by failing to figure *Cockle* benefits into his base wage when it calculated his benefit. The Department countered that any *Cockle* benefits need not be determined or figured here to determine his monthly wage amount because Cena's wage already exceeded the allowable cap amount.[22]

■■ Because we hold that Cena's benefits are determined under the law in effect at the time of his injury, we need not determine whether the reasonable value of Cena's employee benefits package, or *Cockle* benefits, must be included in his wages under RCW 51.08.178. This is so because, even without the inclusion of potential additional amounts in Cena's wage base, he is receiving the maximum benefit allowable. This court avoids deciding issues unnecessary to the resolution of a case and also avoids rendering advisory opinions where there is no real justiciable controversy.[23]

Next, Cena asserts that the Department failed to correctly figure the social security offset against his worker's compensation benefits. Cena acknowledges that the legislature established a setoff of social security benefits against persons receiving total disability when it adopted RCW 51.32.225 in 1986. But he claims that the setoff should be figured against total wages under RCW 51.08.178 before any application of the ceiling. This claim is rejected.

■ First, the Department made its setoff determination in May 1996. Cena did not appeal the order and it became final and binding at that time. Under RCW 51.52.060(1)(a), a worker must file a notice of appeal of the order to the Board. Failure to appeal an order turns the order into a

---

[22] Time loss, loss of earning power compensation, and worker's compensation pension rates are determined by reference to a worker's "wages" as defined in RCW 51.08.178, at the time of the injury. *Cockle*, 142 Wn.2d at 806.

[23] *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000); *To-Ro Trade Shows v. Collins*, 100 Wn. App. 483, 490, 997 P.2d 960 (2000), *aff'd*, 144 Wn.2d 403, 27 P.3d 1149 (2001).

final adjudication and precludes reargument of the order.[24] Therefore, we decline to review Cena's claim of error.[25]

■ Cena argues the Board and the superior court erred by failing to grant interest pursuant to RCW 51.52.135(2) and (3)[26] on the amounts encompassed in the two additional payments made after recalculation. But Cena's claim for interest is premature. The Board cannot fix interest because the underlying Board decision of December 9, 1999, is the subject of a separate appeal to the superior court, and to our knowledge there has been no decision rendered in that case. If interest is to be awarded, the superior court will likely direct the Board to do so as required under WAC 263-12-160(2). Thus, until a superior court order is filed directing the Board to fix interest, it would be premature to order an award here.

## Motion to Strike

■ Cena brought a motion to strike the Department's brief due to alleged violations of the Rules of Appellate Procedure (RAP). RAP 10.3(a)(7) provides that an appendix may not include materials not contained in the record on review without permission of the appellate court, *except* as provided in RAP 10.4(c). RAP 10.4(c) allows presentation of

---

[24] *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 538, 886 P.2d 189 (1994); *see also Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 173, 937 P.2d 565 (1997) (failure to appeal Department order renders the order final and deprives the Board and the courts of jurisdiction to act).

[25] Even if we considered Cena's claim, he would not prevail. There is nothing in the record to suggest that the setoff was improperly applied or improperly calculated. Cena argues that the offset should be applied to his total cash wages, not his worker's compensation benefit amount, but the plain language of RCW 51.32.225(1) states that the *compensation* shall be reduced by the Department to allow an offset for social security retirement benefits. There was no error.

[26] Payment of interest to workers on their compensation awards is governed by statute. "When a worker or beneficiary prevails in an appeal by the worker or beneficiary to the board or the court regarding a claim for temporary total disability, the worker or beneficiary shall be entitled to interest at the rate of twelve percent per annum on the unpaid amount of the award after deducting the amount of attorney fees." RCW 51.52.135(2). "The interest provided for in subsection[ ] . . . (2) of this section shall accrue from the date of the department's order granting the award or denying payment of the award. . . . The amount of interest to be paid shall be fixed by the board or court, as the case may be." RCW 51.52.135(3).

a variety of materials in an appendix. Both parties append materials not included in the record, but the complained-of attachments to the Department's brief help the court understand the progression of orders leading up to the actual order on appeal. While they may be of little benefit to a legal determination, there is no reason to strike the entire brief or require modification.

Further, Cena's claim that the Department's use of "BR" for Board Record is a violation of the rule regarding reference to the record is incorrect. The board record is not numbered for use as are clerk's papers, and RAP 10.4(f) allows other suitable abbreviations for recurrent references. The motion is denied.

The decision of the Board of Industrial Insurance Appeals is affirmed, and Cena's request for attorney fees and costs on appeal is denied.

ELLINGTON, A.C.J., and BECKER, J., concur.

Review denied at 153 Wn.2d 1015 (2005).