[No. 55251-1-I.   Division One.   December 19, 2005.]

JIMMY LYNN, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Donna L. Mack* (of *Scott Kinney & Fjelstad*), for appellant.

*Robert M. McKenna, Attorney General,* and *Portia Therese C. Guerrero, Assistant,* for respondent.

¶1 ELLINGTON, J. — In 1999, the Department of Labor and Industries (L&I) entered a final order calculating Jimmy Lynn's compensation benefits. Lynn did not appeal. In 2001,

in *Cockle v. Department of Labor & Industries*,[1] the Washington Supreme Court ruled that the value of health care benefits must be included in calculating workers' compensation. Lynn contends that under RCW 51.28.040, *Cockle* constituted a change of circumstances justifying recalculation of his benefits. We must disagree, and we therefore affirm summary judgment for L&I.

## BACKGROUND

¶2 Until he was injured in 1994, Jimmy Lynn worked at Einar Johanson Insulation and Glass, Inc., receiving wages of approximately $125 daily. The company also paid Lynn's monthly health insurance premium of $181.69. Lynn was awarded workers' compensation benefits by the Department of Labor and Industries.

¶3 L&I calculates a time-loss compensation rate based upon the claimant's monthly cash wages, which include "the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract for hire" at "the time of the injury."[2] RCW 51.08.178. L&I uses a questionnaire to gain the relevant information from the claimant. Before the decision in *Cockle*, L&I did not consider employer-paid health benefit premiums to be wages and did not factor the value of the premiums into the compensation rate. The questionnaire Lynn filled out, which was the standard form in use at the time, did not ask about employer-provided health insurance.

¶4 On December 29, 1995, Lynn's employer stopped paying Lynn's medical insurance premiums. Lynn did not notify L&I that premium payments ceased.

¶5 On March 22, 1999, L&I issued a permanent order setting Lynn's time-loss compensation rate and stating its basis (Lynn's wages, marital status, and dependent status).

---

[1] 142 Wn.2d 801, 16 P.3d 583 (2001).

[2] RCW 51.08.178.

The order made no reference to health care benefits. The order instructed Lynn to notify his claim manager within 60 days "[i]f marital or dependent status, wage information, or date of injury or disease manifestation is incorrect."[3] The order also included the standard notice of legal rights and instructions for pursuing an appeal: "This order will become final 60 days after you receive it unless you file a written request for reconsideration or an appeal within that time."[4] Lynn did not appeal the order.

¶6 In June 1999, Division Two of this court decided *Cockle v. Department of Labor & Industries*,[5] holding that an injured worker's time-loss benefit rate should take into account the value of health insurance the worker was receiving when injured. In January 2001, the Washington Supreme Court affirmed, holding that health care coverage is "consideration of like nature" and is therefore wages.[6] The *Cockle* ruling increased benefits for many workers whose claims arose thereafter.

¶7 On March 11, 2002, Lynn was declared totally and permanently disabled and was moved to L&I's pension rolls. L&I established Lynn's pension rate based upon the 1999 order.

¶8 On May 29, 2002, almost three years after this court's decision and more than one year after the Supreme Court's decision, Lynn requested that L&I adjust both his time-loss compensation rate and his newly established pension rate in light of *Cockle*. L&I denied the request, and the Board of Industrial Insurance Appeals (BIIA) affirmed. Lynn appealed to King County Superior Court, which granted summary judgment to L&I on three grounds: (1) the change in circumstances statute, RCW 51.28.040, does not apply; (2) res judicata bars Lynn's claim; and (3) equitable estoppel

---

[3] Certified Appeals Board Record (CABR) at 28.

[4] *Id.*

[5] 96 Wn. App. 69, 977 P.2d 668 (1999).

[6] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 805, 16 P.3d 583 (2001).

does not overcome res judicata. This appeal followed. The usual standard of review on summary judgment applies.[7]

## ANALYSIS

■■■ ¶9 RCW 58.28.040: Change of Circumstances. A recipient's benefit rate is ordinarily final and permanent when the claim is closed by L&I. However, the Industrial Insurance Act, Title 51 RCW, provides for adjustment of a closed claim in limited situations:

> If change of circumstances warrants an increase or rearrangement of compensation, like application shall be made therefor. Where the application has been granted, compensation and other benefits if in order shall be allowed for periods of time up to sixty days prior to the receipt of such application.[8]

¶10 Lynn contends his benefit rate should be adjusted under this statute and proffers two events as changes in circumstances: first, cancellation of his medical benefits after he completed L&I's questionnaire; and second, issuance of the *Cockle* decision. Essentially this is one argument, raising a single issue: whether judicial interpretation of the governing statute constitutes a change of circumstances under RCW 51.28.040.

¶11 RCW 51.28.040 has been applied only where the claimant's situation is altered by events unique to the claimant. For example, *In re Schmitz* involved a claimant whose benefit rate was adjusted because of a retroactive change in the wages upon which the benefit had been calculated.[9] In *In re Stewart*, free rent was a part of the

---

[7] We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429, 38 P.3d 322, 327 (2002). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

[8] RCW 51.28.040.

[9] *In re Schmitz*, No. 97 5627, 1999 WA Wrk. Comp. LEXIS 290 (Wash. Bd. of Indus. Ins. Appeals Nov. 3, 1999) (state personnel resources board ordered retroactive

claimant's compensation.[10] He continued to receive free rent even after his claim was closed. He later lost the rent-free apartment, and his benefit rate was adjusted under the statute.

¶12 In both of these cases, an event changed the claimant's personal circumstances, and the event occurred *after* the benefits claim was closed. Lynn's health care premiums were terminated *before* the final order issued. Lynn's position was thus identical to that of the claimant in *Cockle*; like her, he could have challenged the final order within the 60-day appeal period. He did not do so.

¶13 BIIA decisions have consistently held that a change in circumstances under RCW 51.28.040 "encompasses a change of facts personal to the claimant, not a change in the judicial interpretation in the law."[11] In four decisions since *Cockle*, the BIIA ruled that res judicata barred recalculation of benefits, noting in each instance that where the claimant was not receiving health care benefits at the time the final order issued, the claimant, "like the claimant in *Cockle*, could easily have appealed, but did not do so."[12]

---

adjustment in wages pursuant to a grievance pending when L&I claim was closed).

[10] *In re Stewart*, No. 96 3019, 1998 WA Wrk. Comp. LEXIS 93 (Wash. Bd. of Indus. Ins. Appeals Apr. 8, 1998).

[11] *In re Hyatt*, No. 02 13243, 2003 WA Wrk. Comp. LEXIS 243, at * 9 (Wash. Bd. of Indus. Ins. Appeals Aug. 28, 2003) (appeal pending); *see also In re Ragsdale*, No. 02 18814, 2004 WA Wrk. Comp. LEXIS 106, at *3 (Wash. Bd. of Indus. Ins. Appeals Feb. 23, 2004) ("change in the law alone is insufficient" to trigger RCW 51.28.040; no changed circumstances where health care benefits terminated five days before unappealed order issued; reinstatement of benefits after final order irrelevant since benefits determined as of date of injury); *In re McCowan*, No. 02 23395, 2003 WA Wrk. Comp. LEXIS 277 (Wash. Bd. of Indus. Ins. Appeals Dec. 3, 2003) (*Cockle* not a change in circumstances under the statute; no changed circumstances where health care benefits terminated before final unappealed order issued) (appeal pending); *In re McLaughlin*, No. 02 18933 & 02 18934, 2003 WA Wrk. Comp. LEXIS 227, at *9 (Wash. Bd. of Indus. Ins. Appeals Nov. 5, 2003) ("publication of the *Cockle* decision is not a change of circumstances as contemplated by RCW 51.28.040"; no changed circumstances where benefits denied six weeks before final order issued).

[12] *In re Hyatt*, No. 02 13243, 2003 WA Wrk. Comp. LEXIS 243, at *8 (Wash. Bd. of Indus. Ins. Appeals Aug. 28, 2003).

¶14 Decisions of the BIIA are not binding precedent for this court, but we may give appropriate weight to an agency's interpretation of the laws it is charged to enforce,[13] and we find the decisions of the BIIA sound.

¶15 The res judicata effect of final decisions already rendered is not affected by subsequent judicial decisions giving new interpretations to existing law.[14] As the Washington Supreme Court has observed: "If prior judgments could be modified to conform with subsequent changes in judicial interpretations, we might never see the end of litigation."[15] We have no reason to believe the legislature intended the change of circumstances statute to be a means to avoid long-standing rules of finality. Rather, we are persuaded the legislature intended the statute to apply to changes in a claimant's individual circumstances, not to changes in judicial interpretation of the applicable law.

¶16 Lynn's claim is thus barred by res judicata unless the doctrine does not apply. As discussed below, it does.

¶17 *Res Judicata.* Res judicata, or claim preclusion, applies where a prior final judgment is identical to the challenged action in "(1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made."[16] The doctrine applies to final L&I orders.[17] However, " '[f]undamental fairness' requires that a claimant must be clearly advised of the issue" before the issue is barred by res judicata.[18]

---

[13] *Jensen v. Dep't of Ecology*, 102 Wn.2d 109, 113, 685 P.2d 1068 (1984) (reviewing court gives substantial weight to an administrative agency's view of the law).

[14] *Columbia Rentals, Inc. v. State*, 89 Wn.2d 819, 823, 576 P.2d 62 (1978).

[15] *Id.*

[16] *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995).

[17] *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 537, 886 P.2d 189 (1994).

[18] *Somsak v. Criton Techs./Heath Tecna, Inc.*, 113 Wn. App. 84, 92, 52 P.3d 43 (2002).

Whether res judicata bars a party pursuing an action is a matter of law reviewed de novo.[19]

██ ██ ¶18 Here, the requirements for res judicata are met. Lynn's appeal involves the same parties, subject matter (calculating his time-loss rate), and cause of action (his benefits claim) as the 1999 order. An L&I decision becomes binding when it is not appealed.[20]

¶19 Lynn contends, however, that the March 1999 order should not be binding because it did not clearly set forth the basis for the time-loss calculation and thus denied him adequate notice of his need to appeal the order for failure to include the value of medical benefits. Lynn relies upon *Somsak v. Criton Technologies/Heath Tecna, Inc.*[21] Somsak received four orders regarding her time-loss benefits. She did not appeal the first three, and L&I closed her claim. After the claim was closed, a fourth order issued, which for the first time explained the basis of Somsak's rate calculation. Somsak appealed the fourth order, and we held her claim not barred by res judicata because the first three orders "failed to clearly advise her of her time-loss compensation's underlying factual basis."[22]

¶20 By contrast, in *Chavez v. Department of Labor & Industries*,[23] involving facts nearly identical to those here, Division Two ruled that a statement of marital and dependent status and money wages was sufficient information to advise the claimant of his rate basis.[24]

---

[19] *Kuhlman v. Thomas*, 78 Wn. App. 115, 119-20, 897 P.2d 365 (1995).

[20] RCW 51.52.060(1)(a). *See Marley*, 125 Wn.2d at 538 ("failure to appeal an order, even one containing a clear error of law, turns the order into a final adjudication, precluding any reargument of the same claim").

[21] 113 Wn. App. 84, 52 P.3d 43 (2002).

[22] *Id.* at 92-93.

[23] 129 Wn. App. 236, 118 P.3d 392 (2005).

[24] *Id.* at 241; *cf. In re Scheeler*, No. 89 0609, 1990 WA Wrk. Comp. LEXIS 43 (Wash. Bd. of Indus. Ins. Appeals Nov. 13, 1990) (appeal not barred by res judicata where unappealed order did not apprise claimant of the underlying basis for her benefit rate).

¶21 Lynn's situation is like Chavez's, not Somsak's. Lynn was advised from the beginning that his time-loss benefits were based on his status on the date of his injury as "married with 2 dependent(s), wages of $2,878.52 per month."[25] Although the March 1999 order did not explicitly state that the calculation did not include employer-paid health insurance, that fact was readily discernible from the statement of what was included. Unlike *Somsak*, Lynn was not left to guess how the time-loss rate had been calculated.[26] The 1999 order did not fail to advise Lynn of the factual basis for the award. Res judicata bars Lynn's challenge to his 1999 wage rate order.

¶22 *Pension Rate.* Lynn contends that even if res judicata bars readjustment of his original time-loss compensation rate, the 2002 order setting his pension rate was timely appealed, and we should order adjustment of his pension rate in light of *Cockle*.[27]

¶23 The problem with this argument is that pension rates, like time-loss compensation rates, are calculated using a formula based on monthly wages at the time of the injury,[28] and both computations use the same definition of wages—to wit, the definition clarified in *Cockle*.[29] In Lynn's case, both calculations were based on the wage determination set forth in the March 1999 order. As we conclude above, that order meets the four elements of res judicata. The order also gave Lynn notice that "any future compen-

---

[25] CABR at 28.

[26] Nor is this a case where multiple issues were raised in the claim but the order definitively addressed only a single issue, leaving the claimant to wonder whether the order represented L&I's final adjudication of all issues. *See In re Gilbertson*, No. 89 2865, 1990 WA Wrk. Comp. LEXIS 711 (Wash. Bd. of Indus. Ins. Appeals Nov. 7, 1990); *In re Johnson*, No. 86 3681, 1987 WA Wrk. Comp. LEXIS 26 (Wash. Bd. of Indus. Ins. Appeals Jul. 13, 1987).

[27] Lynn makes no assignment of error on this ground, and there appears to be no superior court ruling on the issue. L&I does not, however, contend this argument was not preserved. We therefore review it. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

[28] RCW 51.32.060; *Cena v. Dep't of Labor & Indus.*, 121 Wn. App. 915, 924 n. 22, 91 P.3d 903 (2004), *review denied*, 153 Wn.2d 1015 (2005).

[29] RCW 51.08.178; *Cena*, 121 Wn. App. at 924 n.22.

sation orders"[30] would be based on the status outlined in the order. Once that order became final, therefore, res judicata barred relitigation of the determination of wages.

¶24 *Equitable Estoppel.* The Washington Constitution grants courts "a very narrow equitable power . . . to set aside actions of the Department [of Labor and Industries]."[31] However, this power is only "rarely exercised."[32] Courts have granted this extraordinary relief in only two cases, *Ames v. Department of Labor & Industries*[33] and *Rodriguez v. Department of Labor & Industries.*[34] In each case, two elements were present: (1) the claimant was unable to understand the order and the appellate process, and (2) L&I committed some misconduct in communicating the order.

¶25 Lynn first seeks the protection of equity by declaring that he is illiterate and that his wife assisted him in completing his benefits application form. Lynn does not contend, however, that L&I was aware of his illiteracy, or that he did not understand his time-loss award, its basis, or the deadlines for appeals. Unlike the claimants in *Ames* and *Rodriquez*, it appears Lynn understood the process for application and appeal, and understood the orders entered by L&I.

¶26 Lynn also contends that L&I's application form, which failed to inquire about Lynn's employer-provided health care benefits, was a "statement" upon which Lynn based his belief that he need not report such benefits to L&I and that the March 1999 order instructing him to notify a claim manager within 60 days "[i]f marital or dependent status, wage information, or date of injury or

---

[30] CABR at 28.

[31] *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 173, 937 P.2d 565 (1997).

[32] *Id.*

[33] 176 Wash. 509, 30 P.2d 239 (1934) (claimant declared insane, L&I sent order to claimant's home address while claimant committed to state asylum).

[34] 85 Wn.2d 949, 540 P.2d 1359 (1975) (claimant spoke only Spanish but was sent order in English; L&I had constructive notice of illiteracy from medical reports).

disease manifestation is incorrect"[35] denied him notice and an opportunity to report the health care benefits.

¶27 But nothing in L&I's communications was misleading. L&I's use of a standardized form and formula does not constitute misconduct, much less misconduct meriting exceptional relief. The form and formula reflected L&I's understanding of the law. And because L&I was unaware of any reading deficiency on Lynn's part, it could not have committed misconduct in its communications in that regard.

¶28 Nor is Lynn entitled to relief on a theory of L&I's alleged breach of its fiduciary responsibility as trustee of the Industrial Insurance Fund. "To prevail on a breach of fiduciary duty claim, [the claimant] must show that L&I formulated its interpretation of RCW 51.08.178 without using the judgment and care which persons of prudence, discretion, and intelligence exercise in the management of their own affairs."[36] There is no evidence in the record that L&I's pre-*Cockle* interpretation of the statute was arrived at without prudent, intelligent consideration. Indeed, three justices in *Cockle* dissented and agreed with L&I's interpretation of RCW 51.08.178, which alone suggests that L&I's interpretation was supportable by reasoned judgment.[37]

¶29 In sum, under the circumstances here, equity cannot overcome the legal consequences of an unappealed final order. We affirm the superior court.

Cox, C.J., and BAKER, J., concur.

---

[35] CABR at 28.

[36] *Chavez*, 129 Wn. App. at 241, ¶ 8.

[37] *See id.*