[No. 33200-1-II.   Division Two.   March 28, 2006.]

MARK P. VANHESS, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Robert M. McKenna, Attorney General,* and *Steve R. Vinyard, Assistant,* for appellant.

*Wayne L. Williams* (of *Williams Wyckoff & Ostrander, P.L.L.C.*), for respondent.

¶1 VAN DEREN, J. — The Department of Labor and Industries (Department) appeals the trial court's reversal of its denial of a recalculation of Mark P. VanHess's time-loss compensation rate to reflect the value of health care formerly paid by his employer. The Department allowed VanHess's claim for an industrial injury he sustained in

December 1996. In September 1998, the Department calculated VanHess's time-loss compensation rate without including employer-provided health care benefits that VanHess received at the time of his industrial injury. VanHess had stopped receiving the health care benefits before the Department issued its order calculating time-loss compensation, but VanHess did not appeal the Department's order within the prescribed 60 day period. Rather, in 2002, he requested recalculation of his time-loss compensation rate to include those benefits. The Department denied the request and VanHess appealed to the Board of Industrial Insurance Appeals (BIIA), which affirmed the Department's decision. VanHess then appealed to Grays Harbor County Superior Court. The trial court reversed the BIIA's decision and the Department timely appeals.

¶2 We reverse the trial court's decision and reinstate the BIIA's September 10, 2003 decision and order affirming (1) that a time-loss compensation calculation is final if a request for reconsideration or an appeal is not filed within 60 days of its issuance and (2) that a claimant may not show a "change of circumstances" under RCW 51.28.040 based solely on a new judicial interpretation of RCW 51.08.178.

## FACTS

¶3 VanHess sustained an industrial injury on December 12, 1996. At the time, VanHess's employer provided health care benefits that VanHess continued to receive until November 30, 1997.

¶4 In a payment order dated September 28, 1998, the Department allowed VanHess's claim, setting his time-loss compensation rate under RCW 51.08.178 at $1,777.09 per month. The Department's order explained that the rate was based on VanHess's marital status of "single," zero dependents, and wages of $2,640.00 per month. Administrative R. (AR) at 64. But the order did not specifically state whether the Department considered his discontinued employer-provided health benefits in its calculation of his time-loss compensation rate.

¶5 The order also directed VanHess to notify his claim manager within 60 days of receipt of the order if he disagreed with the order's listed marital or dependent status, wage information, or date of injury and further advised VanHess that the order would become final unless VanHess requested reconsideration or appealed within 60 days of receiving it.

¶6 VanHess did not appeal or request reconsideration of the September 1998 order within 60 days. But in a letter dated April 19, 2002, VanHess informed the Department that his employer had terminated his health care benefits and requested that the Department adjust his time-loss compensation rate to reflect the amount of those benefits. The Department denied VanHess's request for adjustment in an order dated June 10, 2002, explaining that a "change in circumstance" did not support VanHess's request. AR at 35.

¶7 VanHess appealed the Department's June 2002 order to the BIIA. The BIIA affirmed the Department's order in a proposed decision and order (PDO) dated April 29, 2003, concluding that (1) under *Cockle v. Department of Labor & Industries*, 142 Wn.2d 801, 16 P.3d 583 (2001), employer-provided health care benefits are considered wages when calculating time-loss compensation; (2) the Department's September 1998 order calculating VanHess's time-loss compensation rate included the elements on which the rate was based; (3) the September 1998 order was final because VanHess did not timely protest or appeal it; (4) VanHess did not experience a "change of circumstances" because the Department's order setting VanHess's time-loss compensation rate was issued in September 1998 and his employer's withdrawal of health care benefits occurred in November 1997; and (5) equity arguments advanced by VanHess were meritless.

¶8 VanHess petitioned the BIIA to review the PDO. The BIIA granted review, but it affirmed the PDO in a decision and order dated September 10, 2003. VanHess then appealed the BIIA's decision to Grays Harbor Superior Court.

The trial court reversed and remanded the BIIA's decision, finding that, "the *Cockle* decision is a change of circumstance, as contemplated by RCW 51.28.040." Clerk's Papers at 41-43.

¶9 The Department timely appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

■ ■ ¶10 A reviewing court may reverse an agency's adjudicative decision if, among other reasons, the agency erroneously applied the law. *Timberlane Mobile Home Park v. Human Rights Comm'n*, 122 Wn. App. 896, 900, 95 P.3d 1288 (2004). When reviewing a superior court's reversal of a decision by the BIIA on summary judgment, we sit in the same position as the superior court and apply standards of the Administrative Procedure Act, chapter 34.05 RCW, directly to the BIIA's record. *Timberlane*, 122 Wn. App. at 900; *Bennerstrom v. Dep't of Labor & Indus.*, 120 Wn. App. 853, 858, 86 P.3d 826 (2004). Although we review the BIIA's legal conclusions de novo and may substitute our own judgment for that of the BIIA, we afford great weight to the BIIA's interpretation of the Industrial Insurance Act, Title 51 RCW. *Timberlane*, 122 Wn. App. at 900; *Bennerstrom*, 120 Wn. App. at 858.

### II. FINALITY OF ORDER

¶11 The Department argues that its September 1998 time-loss compensation calculation and order became final and binding because VanHess did not request reconsideration or appeal it within 60 days. In support of its argument, the Department points first to *Chavez v. Department of Labor & Industries*, 129 Wn. App. 236, 118 P.3d 392 (2005), a recent case that deals squarely with many of the issues VanHess raises in response.[1]

---

[1] The Department submitted its brief on August 4, 2005, approximately three weeks before we issued the *Chavez*, 129 Wn. App. 236, decision on August 23, 2005.

¶12 In *Chavez*, the worker sustained an industrial injury and in an August 31, 1998 order, the Department allowed his claim and set his time-loss compensation rate under RCW 51.08.178 without including the amount of the worker's employer-provided health care benefits. 129 Wn. App. at 238-39. The worker did not appeal the Department's order. *Chavez*, 129 Wn. App. at 239.

¶13 In January 2001, the Washington Supreme Court issued *Cockle*, a decision interpreting RCW 51.08.178 to include the amount of employer-provided health care benefits in the calculation of a worker's time-loss compensation rate. 142 Wn.2d at 822-23. Citing *Cockle*, the worker in *Chavez* requested that his time-loss compensation rate be recalculated to include the amount of his employer-provided health care benefits. 129 Wn. App. at 239. The Department denied his request, concluding that the original August 1998 order was final and that the *Cockle* decision was not a "change of circumstances" warranting recalculation of his time-loss compensation rate under RCW 51.28.040.

¶14 The BIIA affirmed the Department's order and the worker appealed to the superior court. *Chavez*, 129 Wn. App. at 239. The trial court also affirmed the Department's denial of the worker's request for recalculation. *Chavez*, 129 Wn. App. at 239. The worker appealed and we affirmed the BIIA's decision, holding that the Department's August 1998 order carried preclusive effect. *See Chavez*, 129 Wn. App. at 239-43.

¶15 In reaching this determination, we squarely addressed three of five arguments VanHess advances. Further, Division One of this court recently addressed these issues in *Lynn v. Department of Labor & Industries*, 130 Wn. App. 829, 125 P.3d 202 (2005).

A. Fiduciary Duty

¶16 First, VanHess argues that the Department breached its fiduciary duty as trustee. The Department serves as an administrative body authorized by law to act

as trustee of a fund created, established, and maintained for the purpose of providing compensation to workers and their dependents for disabilities proximately caused by industrial accidents or occupational diseases. *Parks v. Dep't of Labor & Indus.*, 46 Wn.2d 895, 897, 286 P.2d 104 (1955). A trustee owes to the beneficiaries of the trust "the highest degree of good faith, care, loyalty, and integrity." *Allard v. Pac. Nat'l Bank*, 99 Wn.2d 394, 403, 663 P.2d 104 (1983).

¶17 To prevail on a breach of fiduciary duty claim, the worker must show that the Department formulated its interpretation of RCW 51.08.178 without using the judgment and care those persons of prudence, discretion, and intelligence exercise in the management of their own affairs. *Lynn*, 130 Wn. App at 840; *Chavez*, 129 Wn. App. at 241; *see also In re Estate of Cooper*, 81 Wn. App. 79, 88, 913 P.2d 393 (1996). In *Chavez*, we explained that the Department did not breach its duty as trustee of the industrial insurance fund because the worker presented no evidence supporting his contention. 129 Wn. App. at 241.

¶18 Similarly, VanHess has presented no evidence that the Department breached its fiduciary duty as trustee. Although VanHess implies that the Department misled him by not asking about employer-provided health care benefits on its industrial injury accident form, the Department did not interpret RCW 51.08.178 to include employer-provided health benefits before the 2001 *Cockle* decision. *Cockle*, 142 Wn.2d at 811-12. In *Cockle*, the court acknowledged at the outset that the Department had proposed a reasonable interpretation of RCW 51.08.178. 142 Wn.2d at 807-08. This acknowledgement thwarts any implication that the Department's industrial injury accident form was misleading before *Cockle* and, thus, a breach of the Department's fiduciary duty as trustee of the Industrial Insurance Fund.

## B. Time-Loss Calculation

¶19 Second, we rejected the argument that the Department's August 1998 wage order was not binding because it did not clearly set forth the basis for the time-loss

calculation and therefore did not adequately apprise the claimant of the need to protest or appeal the order. *Chavez*, 129 Wn. App. at 241-42. We observed that although the worker's August 1998 wage order did not expressly mention that the calculation excluded employer-paid health care benefits, this fact was readily understood from the explicit statement of what was included in the calculation. *Chavez*, 129 Wn. App. at 242. Therefore, we concluded that the claimant was not left to guess at how the Department reached the calculation. *Chavez*, 129 Wn. App. at 242. Similarly, the September 1998 order calculating VanHess's time-loss compensation rate advised VanHess of what the Department included when calculating his time-loss compensation rate. *See Lynn*, 130 Wn. App. at 838.

C. Equitable Estoppel

¶20 Finally, in *Chavez* we rejected the worker's reliance on *Fields Corp. v. Department of Labor & Industries*, 112 Wn. App. 450, 45 P.3d 1121 (2002), for the proposition that the Department was equitably estopped from denying him the benefit of the *Cockle* decision, holding that the *Fields Corp.* exception was very narrow and exercised only rarely. *Chavez*, 129 Wn. App. at 242. In *Fields Corp.*, the employer did not timely appeal the Department's allowance of disability benefits. *Chavez*, 129 Wn. App. at 242. Nevertheless, the court concluded that it would be inequitable to apply the doctrine of claim preclusion because, indisputably, it was impossible, not just difficult or impractical, for the employer to have known within the 60 day appeal period that any evidence existed supporting such an appeal. *Chavez*, 129 Wn. App. at 242 (explaining *Fields Corp.*, 112 Wn. App. at 460).

¶21 In *Chavez*, we applied this principle, holding that "it was not impossible, let alone difficult or impractical, for [the claimant] to appeal the 1998 order and argue, like the claimant did in *Cockle*, that his time-loss rate should include employer-paid health insurance." *Chavez*, 129 Wn. App. at 242. Similarly, it was not impossible, difficult, or

impractical for VanHess to appeal the Department's September 1998 order setting his time-loss compensation rate. VanHess could have argued, as did the claimant in *Cockle*, that his time-loss compensation rate should have included employer-provided health care benefits. *See Chavez*, 129 Wn. App. at 242.

### III. EQUITABLE TOLLING

¶22 Citing *Danzer v. Department of Labor & Industries*, 104 Wn. App. 307, 318, 16 P.3d 35 (2000), VanHess argues that the 60 day period to appeal or protest the Department's September 1998 order should be tolled because VanHess was misled by the Department's actions.[2]

¶23 In *Danzer*, the court held that the doctrine of equitable tolling permits an action to proceed under certain circumstances even though the statutory time limit has elapsed. 104 Wn. App. at 318. Appropriate circumstances include bad faith, deception, lack of notice of filing requirements, or false or misleading assurances by the Department. *Danzer*, 104 Wn. App. at 318. Here, there is no evidence that any of these circumstances exist. The Department's September 1998 payment order states the bases of the Department's calculation and emphasizes the timing and procedures required for protests and appeals by placing this notification in a starred box. The Department made no assurances to VanHess that it did not keep. Moreover, as explained earlier and as Division One held in *Lynn*, 130 Wn. App. at 839-40, the Department's industrial insurance accident form was not misleading. Equitable tolling is not appropriate in this case.

---

[2] In his brief, VanHess states that the 60 day appeals period should be tolled for the Department's June 2002 order denying his request for recalculation. Because VanHess in fact appealed that order within the 60 day period, we presume that the date listed in the brief was a typographical error. Also, VanHess does not elaborate on how the Department misled him, making only the bald assertion that the Department misled him.

IV. "Change of Circumstances" under RCW 51.28.040

¶24 The Department contends that VanHess was precluded from having his time-loss compensation rate recalculated nearly four years after the Department's order without demonstrating a "change of circumstances" as contemplated by RCW 51.28.040. And because VanHess failed to show a "change of circumstances," he is not entitled to a recalculation of his time-loss compensation rate.

¶25 In response, VanHess argues that the *Cockle* decision itself constituted a "change of circumstances" as contemplated by RCW 51.28.040.[3] In *Chavez*, we expressly reserved this issue by not addressing it. *Chavez*, 129 Wn. App. at 240 n.3.

¶26 Division One addressed this issue in *Lynn*, 130 Wn. App. at 834, and as the court noted in *Lynn*, the BIIA has rendered its opinion in at least four decisions since *Cockle* that res judicata bars recalculation of benefits "where the claimant was not receiving health care benefits at the time the final order issued" and " 'the claimant . . . could easily have appealed, but did not do so.' " *Lynn*, 130 Wn. App. at 835 (quoting *In re Hyatt*, No. 02 13243, 2003 WA Wrk. Comp. LEXIS 243 (Wash. Bd. of Indus. Ins. Appeals Aug. 23, 2003) (appeal pending)). In *In re Hyatt*, the BIIA specifically held that the publication of *Cockle* does not in itself constitute a "change of circumstances." *Hyatt*, 2003 WA Wrk. Comp. LEXIS 243, at *8-9. The BIIA's interpretation of the phrase "change of circumstances" encompasses a change of facts personal to the claimant, not a change in the judicial interpretation of the law. *Hyatt*, 2003 WA Wrk. Comp. LEXIS 243, at *9. Quoting *Columbia Rentals, Inc. v. State*, 89 Wn.2d 819, 823, 576 P.2d 62 (1978), the BIIA concluded that if prior judgments could

---

[3] RCW 51.28.040 states that:

If change of circumstances warrants an increase or rearrangement of compensation, like application shall be made therefor. Where the application has been granted, compensation and other benefits if in order shall be allowed for periods of time up to sixty days prior to the receipt of such application.

be modified to conform with subsequent changes in judicial interpretation of applicable law, litigation might never end. *Hyatt*, 2003 WA Wrk. Comp. LEXIS 243, at \*6. The BIIA's interpretation of the "change of circumstances" necessary under RCW 51.28.040 is that a judicial change in the interpretation of RCW 51.08.178 does not affect the finality of an order setting a worker's time-loss compensation rate.[4] *Hyatt*, 2003 WA Wrk. Comp. LEXIS 243, at \*5-6.

¶27 While we may substitute our own judgment for that of the BIIA regarding issues of law, we also give great weight to the BIIA's interpretation of the Industrial Insurance Act. *Timberlane*, 122 Wn. App. at 900; *Bennerstrom*, 120 Wn. App. at 858; *see also Lynn*, 130 Wn. App. at 836 ("Decisions of the BIIA are not binding precedent for this court, but we may give appropriate weight to an agency's interpretation of the laws it is charged to enforce, and we find the decisions of the BIIA sound." (footnote omitted)).

¶28 We reverse the trial court's decision and reinstate the BIIA's September 10, 2003 decision and order affirming (1) that a time-loss compensation calculation is final if a request for reconsideration or an appeal is not filed within 60 days of its issuance and (2) that a claimant may not show a "change of circumstances" under RCW 51.28.040 based solely on a new judicial interpretation of RCW 51.08.178.

¶29 We reverse.

QUINN-BRINTNALL, C.J., and ARMSTRONG, J., concur.

---

[4] Here, VanHess's personal circumstances did not change after the Department's September 1998 payment order. VanHess stopped receiving employer-provided health care benefits in November 1997, nearly a full year before the Department calculated his time-loss compensation rate.