FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9: 03

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRODERICK HAGSETH, | No. 42680-3-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, C.J. — Broderick Hagseth appeals the superior court's judgment as a matter

of law holding him liable for a $13,248.81 overpayment in industrial insurance benefits. He

argues that he presented evidence that he was not a part-time or intermittent employee of Express

Personnel Services, making judgment as a matter of law inappropriate. We reverse and remand.

## FACTS

Hagseth worked for Express Personnel Services, Inc., a temporary staffing service. In

late January 2005, Hagseth was working for Express on assignment to Adams Lumber when he

injured his shoulder. In 2005, L&I issued an interlocutory order awarding Hagseth time loss

compensation based on wages of $1,496 per month. Hagseth received compensation under this

interlocutory order until 2007, when L&I issued a wage order affirming $1,496 per month as the

correct wage rate. L&I determined this rate using the statutory calculation method for

employees who are normally employed five days per week and are not seasonal, part-time or

intermittent. RCW 51.08.178(1)(e), (2).

Express protested the wage order. L&I reconsidered the order and issued a new, superseding order in 2008. The 2008 order adjusted Hagseth's monthly wage calculation to $239.08 per month based on his average pay during the twelve month period before his injury. L&I determined this rate using the statutory calculation for employees who are "exclusively seasonal," or "essentially part-time or intermittent." RCW 51.08.178(2). Based on this adjusted rate, L&I determined that it had overpaid Hagseth $13,248.81.

Hagseth protested the 2008 order, but L&I affirmed its decision. Hagseth appealed to the Board of Industrial Insurance Appeals (BIIA) and the case proceeded to a hearing before an industrial appeals judge.

At the hearing, Hagseth testified that while he was available and wanted to work full time for Express in 2004, he did not work full time for the entire year. He further testified that during his assignment at Adams, he worked between eight and ten hours per day, five to six days per week. He testified that he wanted to be hired for a full time position with Adams, and that it was his understanding that Adams planned on hiring him.

L&I presented evidence, based on Hagseth's employment records, that Hagseth started working for Express in 1991. The record showed that Hagseth worked for Express for six weeks in 1991; a full year in 1992; one day in 1994; four weeks and three days in 1996; five days in 1997; one week and three days in 1999; three days in 2000; 33 weeks and two days in 2003; and four weeks in 2004 before his accident at Adams.[1] Hagseth's assignment at Adams Lumber lasted five weeks, after which he spent five weeks doing light-duty work at the Express office.

---

[1] Hagseth did not work for Express at all in 1993, 1995, 1998, 2001, or 2002. State records show that Hagseth worked for a variety of other employers in 2000, 2001, 2002, and 2003, but never achieved full-time employment.

L&I further presented evidence that Hagseth had never sought unemployment benefits between 2000 and 2009.

L&I called Jackie Rayan, Express's worker's compensation manager for western Washington. Rayan testified that Hagseth's work history was typical of a temporary worker. She testified that employees interested in full-time work are typically sent on "evaluation assignment[s]," where they work for an Express client for 17 weeks so that the client can decide whether to hire them. Report of Proceedings (RP) (Feb. 26, 2009) at 41-42. But Rayan testified that the longest Hagseth ever worked for a single Express client was twelve weeks.

Rayan admitted that Adams was evaluating Express employees as permanent hires, and thus the Adams job could have been classified as an evaluation assignment. But Adams was filling fewer positions than there were Express workers assigned to work there, i.e. Adams would not hire every Express employee. Rayan further testified that while she assumed that "anyone" would desire full-time employment, she could not say whether Hagseth desired full-time work.

The industrial appeals judge issued a proposed decision and order finding that Hagseth's relationship with Express was "intermittent and not continuous or regular employment." Administrative Record (AR) at 28. The judge accordingly concluded that Hagseth's relationship to his employment was "essentially part-time or intermittent." AR at 28. The judge affirmed L&I's order reducing Hagseth's benefits and holding him responsible for an overpayment.

Hagseth petitioned the BIIA for review of the industrial appeals judge's proposed decision and order. The BIIA affirmed. Hagseth then appealed to the superior court. L&I filed a motion for judgment as a matter of law before the superior court. The superior court held a

hearing on L&I's motion. The superior court issued findings of fact and conclusions of law, granting judgment as a matter of law to L&I. Hagseth now appeals to this court.

## ANALYSIS

### I. STANDARD OF REVIEW

In an industrial insurance appeal, unlike in a typical agency appeal, we review the superior court's decision, not that of the agency. *Compare* RCW 51.52.140 (industrial insurance appeal "shall lie from the judgment of the superior court as in other civil cases") *with Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 7, 256 P.3d 339 (2011) (example of typical agency appeal where appellate court stands "in the same position as the superior court" and directly reviews agency record). Before the superior court, the BIIA's decision is prima facie correct; the challenging party bears the burden of proof. RCW 51.52.115.

We review motions for judgment as a matter of law de novo, applying the same standard as the trial court. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003). Judgment as a matter of law is proper when, viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, substantial evidence does not support the nonmoving party's claims. *Joy. v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 619, 285 P.3d 187 (2012). The nonmoving plaintiff bears the burden of production on this question. *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 479, 205 P.3d 145 (2009). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person that a premise is true. *Joy*, 170 Wn. App. at 619.

We must liberally construe the Industrial Insurance Act (Act) "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the

course of employment." RCW 51.12.010. Doubts are to be resolved in favor of the injured worker. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 598, 257 P.3d 532 (2011). While we may substitute our own view of the law for that of the BIIA, we give great weight to the BIIA's interpretation of the Act. *VanHess v. Dep't of Labor & Indus.*, 132 Wn. App. 304, 315, 130 P.3d 902 (2006). The BIIA designates certain of its decisions as "significant decisions," which we consider persuasive but not binding authority. RCW 51.52.160; *Stone v. Dep't of Labor & Indus.*, ___ Wn. App. ___, 289 P.3d 720, 725 (2012). We have declined to consider BIIA decisions not designated as significant. *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 767 n.3, 109 P.3d 484 (2005).

## II. CLASSIFICATION OF HAGSETH'S EMPLOYMENT

Hagseth argues that he was not an essentially part-time or intermittent worker, making the trial court's judgment as a matter of law against him erroneous. Because Hagseth produced substantial evidence to support this claim, we agree and reverse the judgment as a matter of law against Hagseth.

The Act's "default" provision for calculating time loss benefits is RCW 51.08.178(1). *Dep't of Labor & Indus. v. Avundes*, 140 Wn.2d 282, 290, 996 P.2d 593 (2000). Under this subsection, monthly wages for the purpose of time loss compensation are calculated by multiplying the employee's daily wage by a multiplier based on the number of days per week the employee worked. RCW 51.08.178(1). But when the worker's employment is "exclusively seasonal in nature" or when "the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent," wages are calculated under RCW 51.08.178(2). Wages are determined under subsection (2) by dividing by twelve the wages

earned "in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern." RCW 51.08.178(2).

It is undisputed that Hagseth's employment was neither exclusively seasonal nor essentially part-time. It is further undisputed that his employment itself was not essentially part-time. The only issue here is whether Hagseth's *relation* to his employment was essentially intermittent. Our Supreme Court adopted the test for determining whether employment is essentially intermittent in *Avundes*, 140 Wn.2d at 290.

The *Avundes* test has two stages. 140 Wn.2d at 290. If, under either stage, the employee is found to be an intermittent worker, RCW 51.08.178(2) applies. 140 Wn.2d at 290. Under the first stage, we examine "the type of employment." *Avundes*, 140 Wn.2d at 290. The *Avundes* court adopted this test from the BIIA's decision in *In re John Pino*, Nos. 91 5072 & 92 5878, 1994 WL 144956 (Wash. Bd. of Indus. Ins. Appeals Feb. 2, 1994). *Avundes*, 140 Wn.2d at 287. And *Pino* clarifies that this first stage analysis focuses on "the nature of the work actually performed at the time of the injury." 1994 WL 144956, at *4.

The second stage of the *Avundes* test examines whether the employee's *relation* to the work was intermittent. 140 Wn.2d at 290. To determine whether the employee's relation to the work was intermittent, we examine "all relevant factors, including" (1) "the nature of the work," (2) "the worker's intent," (3) "the relation with the current employer," and (4) "the worker's work history." 140 Wn.2d at 290. *Pino* clarifies that this second stage analysis focuses on "the worker's participation in or relationship to the employment." 1994 WL 144956, at *4.

There is no indication in the record that the nature of the work Hagseth was performing at the time of his injury was anything but full-time, and thus the parties do not dispute the first stage of the *Avundes* test.[2] But they dispute the second stage, whether Hagseth's relation to the work was intermittent.[3] Taking the evidence in the light most favorable to Hagseth, we cannot conclude as a matter of law that his relation to his work was intermittent. We therefore reverse judgment as a matter of law against Hagseth.

There is no dispute in the record that the nature of the work for Adams was full-time. And Hagseth testified that he intended to work for Express full-time. Moreover, Hagseth wanted to be hired away from Express, and there was the possibility that Adams would do so. According to Hagseth, he could perform the work at Adams and it was his understanding that Adams planned to hire him. And while Hagseth's work history shows that Hagseth had been intermittently employed in the past, we cannot say that this factor predominates as a matter of law. Taking the evidence in the light most favorable to Hagseth, there was substantial evidence to show that his relation to his work was not intermittent.

---

[2] It appears that the parties are correct on this point; taking the evidence in the light most favorable to Hagseth, he was working approximately full time when he was injured. Payroll records show that Hagseth worked for Adams for 19.5 hours for the pay period ending January 2; 40.5 hours for the pay period ending January 9; 42.5 hours for the pay period ending January 23; and 34 hours for the pay period ending January 30. Although he worked only 8 hours for the next pay period ending February 6, he was injured on January 31, the Monday of that week.

[3] L&I argues that Hagseth's claim also fails under the definition of the word "intermittent" that we adopted in *School Dist. No. 401 v. Minturn*, 83 Wn. App. 1, 920 P.2d 601 (1996). But the current analysis of this issue is set out in the Supreme Court's more recent *Avundes* case. There appears to be no legal basis to treat *Minturn* as having established an alternative and equally valid analytical test. We do not address the State's arguments regarding *Minturn*.

Our conclusion is bolstered by *Avundes*. There, the Supreme Court agreed with the Court of Appeals decision in the same case, which held,

> "There is no logical reason why a claimant should be penalized solely because his *prior* employment was irregular or uncontinuous. Such a rule would be unfair to an employee who had worked a series of jobs before being injured, and it would shift the analysis away from the proper focus on the injured worker's lost earning *capacity*. Nor does the conclusion negate RCW 51.08.178(2)(a), which properly should apply to a claimant whose *current* employment relationship is intermittent."

140 Wn.2d at 288 (quoting *Dep't of Labor & Indus v. Avundes*, 95 Wn. App. 265, 276-77, 976 P.2d 637 (1999)). Thus, it would be error for us to focus solely on Hagseth's history of sporadic employment to determine that his relation to his work for Express was intermittent as a matter of law.

L&I cites *In re Richard Brixey*, No. 02 14516, 2003 WL 22696970, at *3 (Wash. Bd. of Indus. Ins. Appeals Sep. 15, 2003), to the contrary. There, the BIIA found that a worker's employment was essentially part-time and intermittent under the first prong of the *Avundes* test. *Brixey*, 2003 WL 22696970, at *3. But the BIIA has not designated *Brixey* as a significant decision. Moreover, the BIIA decided *Brixey* in its role as a fact finder, rather than on a motion for judgment as a matter of law. Because we are reviewing a judgment as a matter of law, we are limited to determining whether substantial evidence supports Hagseth's claims. Because such evidence exists, judgment as a matter of law was inappropriate here.

No. 42680-3-II

We reverse and remand to the trial court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Van Deren, J.

_____
Penoyar, J.

9