[No. 44464.   En Banc.   March 16, 1978.]

COLUMBIA RENTALS, INC., *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.*

ALICE B. FOUST PROPERTIES, INC., ET AL, *Respondents,* v. THE STATE OF WASHINGTON, *Appellant.*

*Slade Gorton, Attorney General, Malachy R. Murphy, Deputy,* and *Carol A. Smith, Assistant,* for appellant.

*Charles B. Welsh,* for respondents.

HICKS, J.—The State appeals from a summary judgment extending the western boundary of each of respondents' ocean–front properties to a line west of that established in prior quiet title actions. We reverse.

Respondents, in almost every instance, are successors in interest to the plaintiffs in 74 quiet title actions previously

brought against the State in Pacific County Superior Court. The last of those actions was resolved in 1961. The suits were brought because title insurance companies insisted on a judicial determination fixing the ocean–front boundaries before title insurance would be issued.

Judgment in nearly all of the cases was entered by agreement of the parties. All of the plaintiffs in the cases were represented by attorneys and almost all of the judgments entered included findings of fact and conclusions of law. None of those judgments was appealed.

The judgments determined that the western boundary of respondents' land fronting on the Pacific Ocean was the line either described as the vegetation line of November 11, 1889, or the line of mean high tide as of that date. Both descriptions purport to describe the same line. Title to the accreted land west of that line was quieted and established in the State. The land accreted is substantial, ranging up to a quarter of a mile in places.

In a separate action in 1967, the United States Supreme Court reversed this court and held that the owner of upland property conveyed by the United States prior to statehood was entitled to the accretions which had formed along the land. *Hughes v. Washington,* 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438 (1967). That case also established that the appropriate western boundary of the ocean–front property involved was the line of mean high tide of the Pacific Ocean, wherever it may be. Owners of ocean–front property, who had not previously litigated their western boundaries with the State, benefited from the 1967 decision since it establishes the rule to be thereafter applied. The result of *Hughes* and the 74 prior actions is that the western boundaries of ocean–front property in Pacific County vary, creating a checkerboard pattern of ownership.

On March 3, 1975, respondent Columbia Rentals, Inc., filed this suit to modify the earlier judgment against its predecessor in interest and to quiet title in it to the accreted lands between its western boundary as established in the previous action and the line established by *Hughes.*

The other respondents were joined as parties by intervention and by the consolidation of this case with others. Both parties moved for summary judgment.

On September 16, 1976, in its summary judgment order, the trial court ruled that the judgments in the prior cases should be changed to extend respondents' property lines

> so as to place plaintiff and intervenor plaintiffs in the same position with the same restrictions as those landowners in Pacific County who never brought quiet title actions against the State and were affected by the court's decision in *Hughes v. State of Washington,* 389 U.S. 290, 88 S. Ct. 438, 19 L. Ed. [2d] 530 (1967).

The State contends the trial court was in error in its ruling for four reasons: (1) the actions are barred by the doctrine of res judicata; (2) the actions are barred by the statute of limitations; (3) the State has acquired title to the accretions by adverse possession; and (4) the owners are barred by the doctrine of laches. Since we hold the actions to be barred by res judicata, we do not reach the other issues raised by the parties.

Res judicata is a doctrine grounded on the idea that the objective of all judicial proceedings is the rendition of a judgment—an authoritative determination of the legal relations of the parties with respect to some particular matter. The finality of the determination serves the interests of society as well as those of the parties by bringing an end to litigation on the claim. *See* A. Vestal, *Res Judicata/Preclusion* (1969). While Vestal indicates our history is doubtful, we stated in *Curtiss v. Crooks,* 190 Wash. 43, 53, 66 P.2d 1140 (1937):

> The doctrine of *res judicata* was first definitely formulated in the *Duchess of Kingston's* case, [168 Eng. Rep. 175 (1776)] and, as stated in 34 C.J. 743, embodies two main rules which are stated as follows:
> "[1] The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new

action or suit involving the same cause of action either before the same or any other tribunal."

"[2] . . ."

The second rule applies to collateral estoppel with which we are not here concerned.

In *Northern Pac. Ry. v. Snohomish County,* 101 Wash. 686, 688, 172 P. 878 (1918), we identified the essential ingredients of res judicata. Respondents do not argue the lack of any essential elements of res judicata in this instance. Rather, they contend that the prior judgments were entered by consent and should be modified by an exercise of the court's equitable power. While respondents state that they do not wish to place the State's course of conduct in any specific equitable pigeonhole, they contend that the court's equity powers can always be utilized to prevent "manifest injustice". *Metropolitan Park Dist. v. State,* 85 Wn.2d 821, 539 P.2d 854 (1975).

However, we are not referred to any case where the final judgment of a court has been altered because of a changed judicial interpretation of the law in a subsequent case. This court has previously refused to vacate a judgment on that basis. *Pacific Tel. & Tel. Co. v. Henneford,* 199 Wash. 462, 92 P.2d 214 (1939).

Even if "manifest injustice" might warrant a departure from the normal operation of res judicata, we do not find respondents suffered such inequity. Since the original suits to quiet title were initiated at the insistence of title companies, we presume that most occurred in the course of the sale of the land involved. It would seem that in those instances respondents purchased their property *after* the western boundary was judicially established and knew precisely what they were getting.

All 74 of the earlier actions were initiated by the property owners against the State. The owners were represented by attorneys and could have appealed from the judgments entered. Their failure to appeal cannot be attributed to conduct of the State and the State should not be held

responsible for the resulting disparity in property ownership. Based on these facts, we cannot find such "manifest injustice" as would warrant abandoning the doctrine of res judicata.

We note with interest *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 50 L. Ed. 2d 550, 97 S. Ct. 582 (1977). That case, though not precisely on point, casts doubt on the continued validity of *Hughes.*[1]

If prior judgments could be modified to conform with subsequent changes in judicial interpretations, we might never see the end of litigation. This case clearly illustrates that point. If the prior judgments could be changed to conform with *Hughes,* then should *Hughes* be overruled, another suit to again change judgments would be in order. That is precisely what the doctrine of res judicata precludes. We hold respondents' actions are barred by res judicata.

Reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

---

[1]"In addition, as the Court is certain to announce when the occasion arises, today's holding also overrules *Hughes* v. *Washington,* 389 U. S. 290, [19 L. Ed. 2d 530, 88 S. Ct. 438] (1967), a nine-year-old decision also joined by all but one of the participating Justices." *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 383, 50 L. Ed. 2d 550, 566, 97 S. Ct. 582 (1977). (Marshall and White, JJ., dissenting.)