# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>RACHELL DANIELS,<br><br>                  Appellant,<br><br>And<br><br>NATHANIEL DANIELS,<br><br>                Respondent. | No.  53224-7-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—The dissolution decree for Rachell Daniels (k/n/a Rachell Bonds) and Nathaniel Daniels provided that the present value of the marital portions of their retirement accounts were to be divided equally. In 2013, the trial court granted the parties' joint motion for an addendum to the dissolution decree and an order requiring Bonds to divide her military retirement to achieve equal division of retirement assets. The parties agreed, and in 2014 the trial court ordered that Daniels would receive a portion of Bonds's monthly disposable military retirement payments. The order also contemplated possible changes in the nature of the military retirement benefits and required Bonds to pay Daniels a monthly payment regardless of the specific character of the retirement benefit.

The army then deemed Bonds permanently disabled. It began paying her military disability retirement instead of disposable retirement and the government stopped paying Daniels his monthly portion. Daniels moved to enforce the 2014 order. In 2019, the trial court entered a

judgment establishing the total amount still owed and requiring Bonds to pay Daniels a monthly amount equivalent to what he received under the 2014 order.

Bonds appeals from the trial court's order enforcing the prior, unappealed final orders and requiring Bonds to make monthly payments to Daniels.

We hold that the dissolution decree and the subsequent orders were valid, unappealed final judgments on the merits. Accordingly, res judicata prevented Bonds from collaterally challenging the validity of those final judgments in her response to Daniels's motion to enforce. We also hold that the trial court properly denied Bonds's CR 60(b) motion to vacate. We affirm.

FACTS

Bonds and Daniels married in 1994, separated in 2006, and entered into a CR 2A agreement in 2007. The Pierce County Superior Court dissolved their marriage in 2008. At the time of the dissolution decree, Bonds was a United States Army captain in good health and she planned to receive military retirement when she retired. Daniels worked for the federal government and planned to receive a federal pension.

Together, Bonds and Daniels had six retirement accounts and the marital portions of all six were community property. According to the dissolution decree, the present value of the marital portions of Bonds's and Daniels's retirement accounts would be "totaled and divided such that the end result is each party receives one-half of the present value of the marital portion." Clerk's Papers (CP) at 10. The decree stated, "[N]either the husband[']s nor the wife's military retirement accounts shall be divided. Rather, the spouse with the greater valued accounts" would equalize the division by paying the difference to the other spouse. *Id.* The decree contained a list of assets that

2

the spouse with the higher valued accounts would use to pay the other. Bonds's military retirement was not one of those assets.

Expert valuation conducted after the decree was entered showed that Bonds's accounts were worth more than Daniels's and Bonds therefore owed Daniels. In 2012, Daniels filed a motion to enforce the retirement account provision of the dissolution decree because Bonds had not yet paid him. Based on the valuation and the division formula in the dissolution decree, Daniels argued that Bonds owed him $146,191.30. However, Bonds's nonmilitary retirement accounts did not contain enough money to cover the amount she owed. Daniels asked the trial court to enter an order requiring Bonds to pay him from her military retirement.

Bonds agreed that she owed Daniels $146,191.30, asked the trial court to divide her military retirement, and filed a proposed order to that effect. In 2013, the trial court ruled that Bonds "owed [Daniels] $146,191.30 pursuant to the decree of dissolution" and stated, "This amount shall come from [Bonds's] military retirement." CP at 48.[1]

In 2014, Bonds and Daniels jointly moved for an addendum to the dissolution decree dividing Bonds's military retirement. The parties agreed and the trial court ordered that Bonds would pay Daniels $593.22 monthly from her military retirement upon her retirement "for . . . 20 years and 6 months, plus on[e] final payment in the amount of $259.18." CP at 50. The trial court entered the addendum to the dissolution decree, granting the parties' joint request.

---

[1] Bonds suggested two alternative approaches for paying Daniels from her military retirement. One involved fixed monthly payments beginning upon Bonds's retirement and the other was based on a formula involving the length of Bonds's military service during marriage, the length of Bonds's total service, and the percentage of retirement to which Daniels was entitled. The trial court instructed Daniels to select one option. Daniels chose fixed monthly payments.

The trial court simultaneously entered an order dividing Bonds's military retirement. That order provided that "the Member shall pay the Former Spouse, [Nathaniel] Daniels, a portion of her disposable military retirement pay in the amount of $593.22 per month." Suppl. CP at 224 (sealed). Monthly payments from her disposable military retirement were to be sent directly from the Defense Finance Accounting Service (DFAS) to Daniels. As the dissent notes, this order also interpreted "military retirement" broadly to include other sources of military retirement benefits. *Id.*

Significantly, the 2014 order also included separate language requiring Bonds to pay Daniels $593.22 per month without any limitation as to the source of the money. The order also gave the trial court continuing jurisdiction "to entertain a motion for maintenance, alimony or other award of money to compensate the Former Spouse for any diminution in the amount he receives as his portion of the Member's disposable retired pay." Suppl. CP at 226 (sealed).

In 2016, the army placed Bonds on temporary disability retirement status and she began receiving retirement payments. DFAS began paying Daniels $593.22 per month. DFAS made 15 payments to Daniels between 2016 and 2018, totaling $8,898.30.

In 2018, the army determined that Bonds was 70 percent disabled and medically unfit for duty, so it discharged her, placing her on permanent disability retirement status. This was not an election or voluntary change of status. Bonds began receiving military disability retirement instead of disposable military retirement. As a result of this change, DFAS stopped sending payments to Daniels.

Daniels filed a motion to enforce or clarify the dissolution decree and the 2014 military retirement division order. He also moved under CR 60(b)(6) and (11) to vacate the property award

4

and spousal maintenance provisions of the dissolution decree and award new spousal maintenance or require Bonds to pay the balance of her debt from other sources. Daniels noted that *Howell v. Howell*,[2] a recent United States Supreme Court decision, prohibited state courts from ordering a service member who received disability payments to indemnify their former spouse for any losses resulting from the service member receiving disability payments instead of disposable retirement. Daniels argued that if *Howell* applied, the trial court should vacate the decree and determine a new equitable division of property.

Bonds filed her own CR 60(b) motion to vacate the retirement property division provision of the dissolution decree and the 2013-14 orders. Because she no longer received disposable military retirement pay, Bonds argued that the trial court could not divide her military disability retirement or order indemnification under *Howell*. Bonds asked the trial court to vacate the 2014 military retirement division order.

Daniels argued that the trial court could order Bonds to pay him $593.22 per month directly or pay a lump sum in the amount she owed, and the trial court would not be dividing Bonds's military disability pay or ordering indemnification. Instead, the trial court would be enforcing an agreed-upon "equalization payment" for a preexisting debt using Bonds's military disability retirement as the source of funds. CP at 173.

In January 2019, the trial court entered an order enforcing the judgment against Bonds. The trial court recalculated the total amount Bonds still owed under the terms of the dissolution decree by subtracting the erroneous inclusion of one of Bonds's accounts. The trial court also subtracted the payments Daniels had already received from the total corrected amount and found that Bonds

---

[2] ___ U.S. ___, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017).

owed Daniels a total of $127,193.86. The trial court ordered Bonds to pay Daniels $593.22 per month. Although it does not appear that the trial court expressly denied Bonds's CR 60(b) motion to vacate the 2014 order, the trial court necessarily declined to vacate when it entered an order enforcing the 2014 order instead.[3]

Bonds appeals.

ANALYSIS

A.     Background on Military Disability Retirement in Marriage Dissolution Proceedings

The federal government provides retirement pay to retired service members. *Howell*, 137 S. Ct. at 1402-03. If a service member is disabled, they may receive disability retirement. *Id.* at 1403.

Under a process known as "Chapter 61 retirement," the military may initiate retirement if it deems the service member medically unfit for duty and thus disabled. *See* 10 U.S.C. §§ 1201-1222. Chapter 61 retirees receive disability retirement without electing it or waiving disposable retirement. *See* 10 U.S.C. §§ 1201-1222.[4]

---

[3] Although the dissent reads the 2019 order to significantly modify the terms of the 2014 order, we disagree. The 2019 order appropriately recalculated and updated the total amount due, accounting for payments already made and correcting an undisputed mistake that affected the amount still owed. The interest provision in the 2019 order reflected postjudgment interest going forward at the statutory postjudgment interest rate. RCW 4.56.110(6). *See also In re Marriage of Knight,* 75 Wn. App. 721, 731, 880 P.2d 71 (1994) (recognizing that where a court intends to fix postjudgment interest at a rate different from the statutory rate, it must provide reasoning). The 2014 order did not include a provision departing from standard statutory postjudgment interest.

[4] A veteran may receive Department of Veterans Affairs (VA) disability benefits if the VA determines that the service member is disabled due to a specific service-related injury or illness. *See* 38 U.S.C. § 1110. Unlike military disability retirement under Chapter 61, a service member can only receive VA disability benefits if they elect to waive an equal amount of disposable retired pay. 38 U.S.C. § 5305; *see also Howell*, 137 S. Ct. at 1403.

In 1981, the United States Supreme Court held in *McCarty v. McCarty*, 453 U.S. 210, 220, 233, 236, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), that Congress did not intend any form of military retirement pay to be treated as community property subject to division in marriage dissolution and federal law preempted state courts from dividing military retirement. In 1982, Congress responded to *McCarty* by passing the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408. The USFSPA provided that disposable retirement pay *could* be divided as community property in a marriage dissolution. 10 U.S.C. § 1408(c)(1), (d)(5). However, the USFSPA "expressly excluded from its definition of 'disposable retired pay' amounts deducted from that pay 'as a result of a waiver . . . required by law in order to receive' *disability* benefits" or as a result of disability retirement pay under Chapter 61. *Howell*, 137 S. Ct. at 1403 (emphasis added) (quoting 10 U.S.C. § 1408(a)(4)(A)(ii)); *see also* 10 U.S.C. § 1408(a)(4)(A)(iii).

In 1989, the Court held in *Mansell v. Mansell* that the USFSPA preempted state courts from treating military *disability* retirement as divisible community property. 490 U.S. 581, 589, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). The Court included a footnote explaining that res judicata had been raised, but "[w]hether the doctrine of res judicata, as applied in California, should have barred the reopening of pre-*McCarty* settlements is a matter of state law over which we have no jurisdiction." *Id.* at 586 n.5. Thus, the Court did not address this issue.

Then in 1992, the Washington Supreme Court decided *In re Marriage of Kraft*, 119 Wn.2d 438, 832 P.2d 871 (1992). Citing *Mansell*, the *Kraft* court held that military disability retirement could be considered as an economic circumstance in an equitable distribution of property, so long as the court did not offset the value of the military disability retirement with dollar-for-dollar compensation from another source. 119 Wn.2d at 447-48. In 2001, in *Perkins v. Perkins*, this court

held that the trial court impermissibly divided and distributed veteran's disability benefits when it held that the military spouse was to pay his wife spousal maintenance equal to the disposable military retirement he waived to receive disability benefits. 107 Wn. App. 313, 316-17, 327, 26 P.3d 989 (2001).

Finally, in 2017, the United States Supreme Court decided *Howell*. In *Howell*, the nonmilitary spouse was awarded a portion of her husband's military retirement. 137 S. Ct. at 1404. Long after the dissolution was final, the husband waived a portion of his disposable retirement in favor of disability benefits. *Id*. Citing *Mansell*, the *Howell* Court held that the USFSPA preempted the state court from ordering the husband to pay his former spouse by dividing his disability benefits. *Id.* at 1405-06. Nor could he be ordered to reimburse or indemnify his former spouse for disposable military retirement payments that would have been made but for the shift to disability benefits. *Id.* The nonmilitary spouse had no vested right in ongoing payments. *Id.* at 1405.

The *Howell* Court emphasized that the state court ordered the military spouse to indemnify his former wife "dollar for dollar" to restore the portion of retirement pay that was lost. *Id.* at 1406. The state court's decision "rested entirely upon the need to restore [the nonmilitary spouse's] lost portion." *Id*. The Court recognized that any attempt to "reimburse" or "indemnify" the nonmilitary spouse was merely a semantic difference and ultimately inconsistent with Congress's intent to exclude disability benefits from disposable military retirement that could be divided and awarded in a dissolution. *Id.* Such indemnification was improper under the federal statute and *Mansell. Id.*

The Court acknowledged the contingent nature of a division of disposable military retirement because disposable military retirement could later be replaced by indivisible military disability retirement. *Id.* at 1405. But the Court concluded that the state court could not extinguish

that contingency. *Id.* The Court also acknowledged the hardship that could unexpectedly result for the nonmilitary spouse and emphasized that the potential reduction in the value of disposable military retirement can be taken into account when the state court divides a family's assets or "calculates or recalculates the need for spousal support." *Id.* at 1406. Significantly, the *Howell* Court did not address res judicata or mention the *Mansell* decision's footnote 5.

B.      Res Judicata

Daniels argues that under the doctrine of res judicata, the trial court properly enforced the final, unappealed dissolution decree and the final, unappealed 2013-14 orders. We agree.

        1.      Background on res judicata

Res judicata is designed to protect the finality of judgments. *In re Marriage of Weiser*, ___ Wn. 2d ___, 475 P.3d 237, 246 (2020). "'The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit.'" *Id.* (quoting *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009)). The subsequent and prior action must also involve "(1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made.'" *Id.* at 246-47 (quoting *Williams v. Leone & Keeble, Inc.*, 171 Wn. 2d 726, 730, 254 P.3d 818 (2011)).

If res judicata applies, the final judgment may be reopened "'only when specifically authorized by statute or court rule.'" *Id.* at 247 (quoting *In re Marriage of Shoemaker*, 128 Wn.2d 116, 120, 904 P.2d 1150 (1995)). CR 60(b) defines the limited circumstances under which a party may obtain relief from a final unappealed judgment. Moreover, RCW 26.09.170(1), which governs the modification of marriage dissolution decrees, prohibits the trial court from modifying "'its own decree in the absence of conditions justifying the reopening of the judgment.'" *Id.* (quoting *In re*

*Marriage of Thompson*, 97 Wn. App. 873, 878, 988 P.2d 499 (1999)). In the marriage dissolution context, "res judicata can prevent the reopening of the property settlement and . . . is a matter of state law." *Id.* at 244 (citing *Mansell*, 490 U.S. at 586 n.5). We apply de novo review to the question of whether an action is barred by res judicata. *Id.* at 246.

      2.      <u>Whether res judicata applied to the prior orders in this case</u>

As an initial matter, we reject Bonds's contention that "the doctrine of res judicata has no application here" because "[t]here is no bar to [her] appeal of the . . . 2019 order and judgment." Reply Br. of Appellant at 18. Our ability to consider Bonds's appeal is not in question; rather, the issue is whether we should affirm the trial court's 2019 order under the doctrine of res judicata.

Bonds does not dispute that the four res judicata factors are satisfied. Instead, Bonds contends that the trial court's 2019 order was legally erroneous because it violated *Howell* by ordering her to indemnify Daniels for his share of the disposable retirement that she was no longer eligible to receive. Bonds asserts that this court can properly reverse the 2019 order on this basis, regardless of the finality of the trial court's prior orders. We disagree.

This court recently held, in a case involving a similar dispute, that legal errors do not overcome the res judicata effect of prior, unappealed final judgments. *Weiser*, 475 P.3d at 248. As the Washington Supreme Court has explained, "[i]f prior judgments could be modified to conform with subsequent changes in judicial interpretations, we might never see the end of litigation." *Columbia Rentals, Inc. v. State*, 89 Wn.2d 819, 823, 576 P.2d 62 (1978); *see also Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 836, 125 P.3d 202 (2005). Res judicata also shields a prior unappealed order that was incorrect even at the time it was made, so long as the court had personal and subject matter jurisdiction. *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968).

In *Weiser*, the nonmilitary spouse was awarded a share of her former husband's disposable military retirement in a dissolution agreement. 475 P.3d at 240. The husband then waived his disposable military retirement in favor of military disability retirement. *Id.* We rejected the husband's assertion that the trial court erred by enforcing the final, unappealed dissolution agreement and ordering him to compensate his wife for her share of the waived disposable military retirement. *Id.* at 239. We held that res judicata protected the finality of the unappealed prior order even where the trial court's enforcement of that order resulted in a property division that contradicted federal and state law because "errors of law . . . do not . . . automatically open [the trial court's] judgments to collateral attack." *Id.* at 248.

This court's discussion regarding res judicata in *Weiser* relied on the United States Supreme Court's holding in *Mansell*, 490 U.S. at 586, 594, and the California Court of Appeal's decision on remand in that case, *In re Marriage of Mansell*, 217 Cal. App. 3d 219, 236, 265 Cal. Rptr. 227 (1989) (*Mansell* II). Although the Court ruled in *Mansell* that federal law prohibited dividing military disability retirement as community property, the Court's opinion also "establishe[d] that res judicata [could] prevent the reopening of the property settlement and . . . res judicata is a matter of state law." *Weiser*, 475 P.3d at 244 (citing *Mansell*, 490 U.S. at 586 n.5).

On remand, the California Court of Appeal determined that it could not reopen the prior unappealed final order dividing the couple's property. *Mansell* II, 217 Cal. App. 3d at 229, 234-36. Under res judicata, the California Court of Appeal affirmed the prior order enforcing the division of the husband's military disability retirement as community property despite the fact that it clearly contradicted federal law. *Id.* at 235. The Court denied certiorari of the husband's appeal of that decision. *Mansell v. Mansell*, 498 U.S. 806, 111 S. Ct. 237, 112 L. Ed. 2d 197 (1990).

Here, Bonds did not appeal the dissolution decree or the 2013-14 orders. Nor does she contest that Daniels's motion to enforce the dissolution decree and the 2014 military pay division order involved "(1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision [was] made as did [the] prior adjudication" leading to the 2013-14 orders. *Williams*, 171 Wn. 2d at 730. Bonds fails to establish that res judicata does not apply here. Thus, the trial court could only have relieved Bonds from the finality of the 2013-14 orders by finding that she was entitled to relief under CR 60(b). *See Weiser*, 475 P.3d at 250; RCW 26.09.170(1); CR 60(b).

C.      Bonds's CR 60(b) Motion to Vacate

In response to Daniels's motion to enforce or clarify the dissolution decree and the 2014 military retirement division order, Bonds moved under CR 60(b) to vacate the retirement property division provision of the dissolution decree and the 2013-14 orders. Bonds relied on CR 60(b)(4), (6), and (11). The trial court properly rejected Bonds's motion when it entered an order enforcing the 2013-14 orders rather than vacating them.

1.      CR 60(b) Motions to Vacate

Under some circumstances, CR 60(b) provides a basis for relief from a final unappealed judgment that cannot otherwise be challenged due to res judicata. The moving party must clear a high bar to obtain relief under CR 60(b). As an initial matter, a motion brought under CR 60(b)(4)-(11) must be brought "within a reasonable time." CR 60(b). Significantly, Washington courts have held that "[a] CR 60(b) motion is not a substitute for appeal and does not allow a litigant to challenge the underlying judgment. '[A]n unappealed final judgment cannot be restored to an appellate track by means of moving to vacate and appealing the denial of the motion.'" *Winter v.*

*Dep't of Soc. & Health Servs*., 12 Wn. App. 2d.815, 830, 460 P.3d 667 (2020) (second alteration in original) (quoting *State v. Gaut*, 111 Wn. App. 875, 881, 46 P.3d 832 (2002)). In *Bjurstrom v. Campbell*, the court noted that an unappealed final judgment contained "probable judicial error," but held this error could be addressed only by direct appeal, not a CR 60(b) motion to vacate, explaining, "'If . . . the court decided the issue wrongly, the error, if any, may be corrected by that court itself . . . or by this court on appeal, but the motion to vacate the judgment is not a substitute.'" 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980) (alterations in original) (quoting *State ex rel. Green v. Superior Court*, 58 Wn.2d 162, 164-65, 361 P.2d 643 (1961)).

We review CR 60(b) rulings for abuse of discretion. *See Persinger v. Persinger*, 188 Wn. App. 606, 608, 355 P.3d 291 (2015).

2.  CR 60(b)(4)

Bonds cited CR 60(b)(4) as a basis for vacating the 2014 order. CR 60(b)(4) applies only where there is "[f]raud[,] . . . misrepresentation, or other misconduct of an adverse party." "'[T]he fraudulent conduct or misrepresentation must cause the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense.'" *Sutey v. T26 Corp.*, 13 Wn. App. 2d 737, 756, 466 P.3d 1096 (2020) (emphasis omitted) (quoting *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990)).

Bonds argued below that Daniels committed misconduct by incompletely summarizing the content of a statement his lawyer made at the formal proof hearing supporting the parties' dissolution decree. But Bonds did not provide evidence sufficient to show that Daniels engaged in misconduct, let alone that any alleged misconduct prevented her from fully litigating her case. The trial court properly rejected Bonds's motion to vacate under CR 60(b)(4).

3.      CR 60(b)(6)

Bonds also relied on CR 60(b)(6). Under that subsection, relief from a final judgment may be appropriate where "it is no longer equitable that the judgment should have prospective application." CR 60(b)(6). Bonds contends that it would be "both inequitable and legally improper" to enforce a judgment that awarded a portion of Bonds's military disability retirement to Daniels, since that was contrary to state and federal law. CP at 137.

CR 60(b) does not permit a party "to challenge the underlying judgment" or restore an unappealed final order "'to an appellate track.'" *Winter*, 12 Wn. App. 2d at 830 (quoting *Gaut*, 111 Wn. App. at 881). And under *Kraft*, a trial court could have considered Bonds's military disability retirement in an overall equitable distribution of property and could properly have ordered her to make monthly payments in the same amount to Daniels. 119 Wn.2d 447-48.

To the extent Bonds argues that it was inequitable to enforce the 2013-14 orders because the state and federal law prohibited dividing military disability retirement, this principle was already well established in Washington law in 2014, and Bonds was represented by counsel at that time. Bonds had the opportunity to appeal the 2014 order, but she did not. Instead, Bonds waited four years to move to vacate under CR 60(b)(6), which was not a reasonable length of time. The trial court properly denied Bonds's motion to vacate under CR 60(b)(6).

4.      CR 60(b)(11)

Bonds also argued that CR 60(b)(11) supported vacating the dissolution decree and the 2013-14 orders. CR 60(b)(11) is a catchall provision under which a court may relieve a party from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment."

Bonds asserted that her Chapter 61 disability retirement was an extraordinary, unforeseen circumstance.

Courts have held that "[t]he use of CR 60(b)(11) is to be 'confined to situations involving extraordinary circumstances not covered by any other section of the rule.'" *In re Marriage of Tang*, 57 Wn. App. 648, 655, 789 P.2d 118 (1990) (internal quotation marks omitted) (quoting *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)). It also is limited to "'irregularities extraneous to the actions of the court'" whose judgment is being challenged. *Id.* at 655-56 (quoting *Yearout*, 41 Wn. App. at 902). For example, in *Shandola v. Henry*, 198 Wn. App. 889, 895-96, 396 P.3d 395 (2017), this court held that, despite the res judicata effect of an unappealed final judgment, the petitioner was entitled to relief under CR 60(b)(11) due to a subsequent Washington Supreme Court decision changing the law because extraordinary circumstances existed compelling relief under the rule.

Here, by contrast, there was no change in the law after the 2013-14 orders were entered in this case because the division of military disability retirement has been prohibited under Washington law since at least 1992, when the Washington Supreme Court decided *Kraft*. The trial court properly denied Bonds's motion to vacate under CR 60(b)(11).

We hold that none of Bonds's CR 60(b) arguments provided a basis for relief from the res judicata effect of the unappealed dissolution decree and 2013-14 orders.[5]

---

[5] To the extent any of Bonds's CR 60(b) arguments rested on an assertion that the trial court lacked subject matter jurisdiction to enter an order that federal law prohibited, this court rejected that argument in *Wesier*, holding, "[E]rrors in applying federal legislation are errors of law that do not deprive a court of its jurisdiction or open its judgments to collateral attack. Under *Brown*, Andrew's subject matter jurisdiction argument fails." 475 P.3d at 248 (citing *In re Marriage of Brown*, 98 Wn.2d 46, 48-52, 653 P.2d 602 (1982)).

D.     2019 Enforcement Order

We affirm the trial court's 2019 order. The dissolution decree and the 2013-14 orders were final and unappealed. Bonds has not challenged the validity or effectiveness of these orders. Under the 2013 order, Bonds owed Daniels $146,191.30. The 2014 order provided that Bonds would pay this debt by making monthly payments from her military retirement, which the trial court divided as community property. The 2014 order also required Bonds to pay Daniels $593.22 per month. The order further provided that if Bonds failed to make those payments, the trial court had continuing jurisdiction to compensate Daniels with some other award of money "for any diminution in the amount he receive[d] as his portion of [Bonds's] disposable retired pay." Suppl. CP at 226 (sealed).

Under res judicata, the trial court was required to enforce these prior, unappealed final orders. *See Weiser*, 457 P.3d at 246-49. The trial court's 2019 order complies with the terms of the dissolution decree and 2013-14 orders by requiring Bonds to continue paying Daniels in monthly installments until her remaining debt was paid off.[6] Moreover, the trial court's 2019 enforcement order was valid under the doctrine of res judicata regardless of whether the 2019 order complied with current law prohibiting the division of military disability retirement or indemnification for lost disposable military retirement. *Id*. Because Bonds did not show any grounds for relief under CR 60(b), the trial court also properly denied her CR 60(b) motion to vacate.[7]

---

[6] In its 2019 order, the trial court adjusted the total amount of Bonds's remaining debt by accounting for the erroneous inclusion of one of Bonds's accounts in the prior orders. Neither party challenges this adjustment.

[7] In their briefing, the parties disputed the nature of the trial court's 2019 order. Daniels argued that the trial court ordered an equalization payment and that Bonds was merely to use her disability retirement as the vehicle for satisfying a fixed debt. Bonds, on the other hand, argued that the trial

No. 53224-7-II

E.      Attorney Fees on Appeal

Daniels requests attorney fees under RAP 18.1 and RCW 26.09.140 as well as RAP 18.9(a).

Under RAP 18.1(c), the party seeking attorney fees on appeal must "file a financial affidavit no

later than 10 days prior to the date the case is set for . . . consideration." Daniels did not file a

financial affidavit. Accordingly, we decline Daniels's RAP 18.1 request for attorney fees. With

regard to Daniels's RAP 18.9(a) request, we hold that although Bonds did not prevail, her appeal

was not frivolous. Daniels is also not entitled to attorney fees on this basis. We decline to award

attorney fees on appeal to Daniels.

CONCLUSION

We affirm the trial court's 2019 enforcement order and deny Daniels's request for attorney

fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Glasgow, J.

I concur:

Cruser, J.

---

court ordered either a division of her military disability retirement or an indemnification payment, and she contends that both would have been prohibited by *Howell*, *Perkins*, and *Kraft*. Because we resolve this case on res judicata, we do not further address this issue.

17

Lee, C.J. (dissenting) — Even if the superior court's 2014 Order for Addendum to Decree of Dissolution (2014 order) is final under the principles of res judicata, the superior court's 2019 Order on Motion to Enforce or Clarify the Decree, Vacating Property Award, Vacating Spousal Support, or Granting Judgment, and for Other Relief (2019 order) is an improper modification of the 2014 order. Therefore, I would reverse the superior court's 2019 order.

Res judicata ensures the finality of judgments. *In re Marriage of Weiser*, ___ Wn. App. 2d ___, 475 P.3d 237, 246 (2020). Therefore, a judgment that is final under the principles of res judicata may only be reopened when specifically authorized by statute or court rule. *Id*. "'Res judicata applies where the subsequent action involves (1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made as did a prior adjudication.'" *Id.* at 246-47. If the four factors of res judicata are satisfied, then the superior court may not modify its own decree unless there are grounds justifying the reopening of the judgment. *Id*. at 247. "'A decree is modified when rights given to one party are extended beyond the scope originally intended, or reduced.'"[8] *Id.* (quoting *In re Marriage of Thompson*, 97 Wn. App. 873, 878, 988 P.2d 499 (1999)).

Here, even if the finality of the 2014 order requiring Bonds to pay is not disputed, the issue remains whether the 2019 order properly enforces the 2014 order or whether the 2019 order

---

[8] The doctrine of res judicata prohibits modifications; it does not weigh the effect of those modifications. Instead, CR 60 provides mechanisms for correcting judgments when the judgment includes an error. CR 60(a) allows clerical mistakes to be corrected. And CR 60(b)(1) allows a court to relieve a party from a judgment that is based on a mistake. To the extent the majority is implying that the 2019 order does not modify the 2014 order because it is simply correcting an error in the calculation of the amount owed, I disagree. If the 2014 order was erroneous it should be appropriately corrected through either CR 60(a) or CR 60(b)(1); otherwise, it is an improper modification that is barred by res judicata.

improperly modifies the 2014 order. To resolve this issue, it is important to look at the specific terms of the 2014 order and the 2019 order.

The language of the 2014 order required Bonds to pay Daniels "$146,191.30 *from her military retirement*, once she retires, paying $593.22 per month." Clerk's Papers (CP) at 55 (emphasis added). And in the accompanying military pay division order, the superior court stated,

> For purposes of interpreting this court's intention in making the division set out in this Order, "military retirement" includes retired pay paid or to which [Bonds] would be entitled for longevity of active duty and/or reserve component military service and all payments paid or payable under the provisions of Chapter 38 or Chapter 61 of Title 10 of the United States Code, before any statutory, regulatory or elective deductions are applied. It also includes all amounts of retired pay [Bonds] actually or constructively waives or forfeits in any manner and for any reason or purpose, including, but not limited to, any waiver made in order to qualify for Department of Veterans Affairs benefits. Upon Petitioner's retirement, as division of Community Property, Petitioner shall pay Respondent $593.22 per month.

CP at 224-25. Therefore, under the explicit terms of the 2014 order, Bonds is required to pay Daniels $593.22 per month, from her "military retirement," regardless of the specific source of those payments. CP at 55. The 2014 order did not reduce the $146,191.30 to a lump sum judgment, did include Bond's First Command Account, and did not contain any interest provision. *See* CP at 55-56.

Although the division of military retirement is not permissible under federal law when it includes disability retirement pay, this court recently held that such improper orders may be enforced if they are final orders under the principles of res judicata. *Weiser*, 475 P.3d at 250, 252. Therefore, under *Weiser*, the superior court had the authority to enforce the terms of the 2014 order requiring Bonds to pay $593.22 per month to Daniels from her military retirement, but the superior court did not have the authority to modify the 2014 order. *Id*. at 247.

The superior court's 2019 order granted Daniels a judgment in a lump sum amount of "$146,191.30 with credit for any payments made" and reduced the total amount of the judgment by $10,099.14 because of the "improper inclusion of [Bond's] First Command Account." CP at 210. Furthermore, the superior court's 2019 order imposed a 12% yearly interest rate on the total amount of the judgment, $127,193.86. These changes extended the rights granted to Daniels under the 2014 order and, therefore, is a modification. Because the 2014 order was final under principles of res judicata and *Weiser*, the superior court erred by modifying its terms in the 2019 order. Although the 2019 order also included a payment plan of $593.22 per month, which was consistent with the 2014 order, the 2019 order contained modifications such as including a lump sum judgment, imposing a reduction in the total amount owed, and imposing interest on the amount owed.

Without citing to any authority, the majority concludes that the interest provision is not a modification because the 2014 order would bear interest at the statutory rate even though there was no interest provision included in the 2014 order. I cannot reach the same conclusion. By adding an interest provision, the superior court added a benefit to Daniels and an obligation to Bonds that was not previously there; thus, the court modified the 2014 order.

Because there were no established grounds for reopening the 2014 order, the superior court had no authority to modify the 2014 order by including a lump sum judgment, reducing the amount owed by an improperly included account in the 2014 order, and imposing interest on the judgment amount. *See Weiser*, 475 P.3d at 247. Accordingly, the 2019 order is a modification of the 2014 order, and I would reverse the superior court.

In addition to the majority's misapplication of the principles of res judicata, I believe that the majority's discussion of and holding regarding the superior court's ruling on Bonds' CR 60 motion is misplaced. *See* Majority Opinion at 12-16. Although Bonds filed a CR 60 motion to vacate and the superior court denied this motion, neither Bonds nor Daniels appealed any orders related to Bonds' CR 60 motion. *See Notice of Appeal* (designating "Order on Motion to Enforce or Clarify the Decree, Vacating Property Award, Vacating Spousal Support, or Granting Judgment, and For Other Relief," dated January 25, 2019) at CP at 213. Therefore, Bonds' CR 60 motion cannot be the basis for the resolution of this appeal nor should we be affirming a ruling that has not been appealed.

In sum, I disagree with the majority's application of res judicata principles. Here, the superior court's 2019 order improperly modified the 2014 order and, therefore, violated the principles of res judicata. I would reverse the superior court's 2019 order.



Lee, C.J.